# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROSE WOODS, )
      Plaintiff, )
)
v. )
) Case No. 18-CV-327-TCK-JFJ
ROSS DRESS FOR LESS, INC. a foreign )
Corporation; and )
)
MEGAN BUTLER, an individual,[1] )
)
      Defendants, )

## OPINION AND ORDER

Before the court is the Motion to Strike Plaintiff's Expert, A. Cord Adams, filed by defendant Ross Dress for Less Inc. ("Ross"). Doc. 26. Plaintiff Rose Woods opposes the motion. Doc. 34.

**I. Background**

In this premises liability action, Plaintiff seeks damages for injuries she sustained when she tripped and fell outside the doors of a Ross store located at 1532 E. Hillside Drive in Broken Arrow, Oklahoma. At issue is the placement of a Ross "for hire" sign.

Plaintiff has identified an expert, Addison Cord Adams ("Adams") to offer testimony about the Broken Arrow City Ordinances, the International Building Code ("IBC"), and the International Property Maintenance Code ("IPMC"). Ross contends that Adams should not be permitted to testify because he is not qualified to testify as an expert in this case; his testimony is neither relevant nor reliable, and has no articulable basis; he should be precluded from testifying as to the

---

[1] Although Megan Butler was named as a defendant, she was never served.

applicable law; and his opinions would not be helpful to the jury and would invade the province of the jury.

**II. Applicable Law**

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149 (1999). A trial court's gatekeeper duty requires two separate inquiries: (1) the witness must be qualified to offer the opinions he is espousing and (2) the proponent of the witness bears the burden of proving by a preponderance of the evidence that its witness's opinions are both relevant and reliable. *Kumho Tire,* 526 U.S. at 141, 152. When the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*); Fed. R. Evid. 104(a).

According to his Rule 26 Report, Adams intends to testify that the sign was a hazard that rendered the property dangerous, and that Ross knew or should have known of the danger, but failed to prevent the hazard and the subsequent fall and injury of the plaintiff.

Ross asserts that Adams' proposed testimony does not meet the standards of Fed. R. Civ. P. 26(a)(2), Fed. R. Evid. 702 and *Daubert* because he is unqualified to testify as an expert in this case; his testimony is neither relevant nor reliable, and has no articulable basis; he should be

2

precluded from testifying as to the applicable law; and that his opinions will not be helpful to the jury and would invade the province of the jury.

## III. Analysis

### A. Qualifications

In order to qualify as an expert, a proposed witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). An expert who "possesses knowledge as to a general field" but "lacks specific knowledge does not necessarily assist the jury." *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998). Proposed expert testimony must therefore "fall within the reasonable confines of [the witness's] expertise." *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (internal quotation marks omitted).

"District courts have broad discretion in determining the competency of expert witnesses." *United States v. Nichols*, 169 .3d 1255, 1265 (10th Cir. 1999). The court must determine whether the expert's qualifications are both "(i) adequate in a general, qualitative sense (i.e., 'knowledge, skill, experience, training or education' as required by Role 702) and (ii) specific to the matters he proposed to address as an expert." *In re Williams Securities Litigation*, 496 F. Supp. 2d 1195, 1232 (N.D. Okla. 2007).

Adams lists his qualifications in his Rule 26 Report as: "Certified Legal Investigator, Certified Member International Code Council, I.C.C. Certified Property Maintenance and Housing Inspector and A.N.S.I Walkway Auditor Certificate Holder." Doc. 26, Ex. 2, January 2, 2019 Rule 26 Report.

Adams graduated from Checotah High School in 1983 and took some general and criminal justice courses at Northeastern State University. Doc. 26, Ex. 1 at 5:10-13, 6:1-24; Ex. 2. He does not hold a college degree. *Id.* His previous experience includes working at Phoenix Savings and Loan, working as a process server and working at a steel plant. *Id.*, Ex. 1at 102:15-103:9. He has attended some seminars, and has had some training at the National Floor Safety Institute ("NFSI"), where he obtained a certificate in November 2018 (the same month Plaintiff's counsel got him involved in this case and two months before he issued his Rule 26 Report) to become a Walkway Auditor Certificate Holder ("WACH"). *Id.*, Ex. 1 at 91:16-92:19. The WACH training took four days. *Id.* at 6:25-7:16. He testified that his purpose in obtaining the WACH was to "expand my role as an expert and my understanding in the investigation of premises and slip and falls and trip and falls" so he could testify as an expert in premise liability cases. *Id.* at 7:22-8:5.

Adams is a certified legal investigator, which—in his opinion—qualifies him in the gathering of factual information and experience. *Id.* at 17:12-19. However, he admits that being a certified legal investigator does not make one a premises liability expert. *Id.* at 99:15-19. He also has a certificate as a property maintenance and housing inspector, which requires the applicant to be a member of the International Code Council ("ICC"), but requires no training. *Id.* at 97:12-99:5. In order to obtain ICC certification, he had to submit his application, pay a fee and take an open-book test consisting of questions on the International Residential Code and the IPMC. *Id.* at 97:17-99:11.

Adams attended no seminars regarding premises liability before he prepared his Report of Findings in this case. *Id.* at 99:19-101:17; Ex. 2, Report of Findings. After he prepared his Report of Findings, he attended some premises liability seminars sponsored by the Oklahoma Association Justice (formerly the Oklahoma Trial Lawyers Association), commonly recognized as Plaintiffs'

Bar Association. *Id.*, Ex. 1 at 99:19-101:17. None of Adams' previous publications or speaking engagements deal with premises liability. *Id.* at 106:19-107:6. Adams has previously testified twice in court. The first time was so long ago that he did not have enough recollection of it to list on his expert CV. *Id.* at 76:8-77:3. The second time he testified in court was in a case involving a pedestrian accident—not premises liability. *Id.* at 76:14-77:3.

Adams has never been certified as a premises liability expert by a court or allowed to testify as a premises liability expert in any court case. *Id.* at 77:4-13. Adams' proposed expert testimony was excluded in a Tulsa County District Court premises liability case, *Sharon Kanold v. Tulsa Teachers Credit Union*, Case No. CJ-2015-195. *Id.*, Ex. 3. His proposed testimony in that case dealt with a trip-and-fall over an uneven section of concrete and expansion joint, and whether or not the sidewalk in question was in compliance with applicable property maintenance codes. *Id.*, Ex. 1 at 107:7-18.

The Court concludes, based on Adams' lack of experience or training in premises liability law, that he is not qualified to testify as an expert in this case.

**B. Relevance and Reliability of Proposed Testimony**

Even if the Court were to conclude that Adams is qualified, his testimony would be allowed only if it meets the following requirements:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue;
(2) The testimony is based on sufficient facts or data;
(3) The testimony is the product of reliable principles and methods; and
(4) The expert has reliably applied the principles and methods to the facts of the case.

*See* Fed. R. Evid. 702.

### 1. Whether Expert's Knowledge Will Help Jurors Understand Evidence or Determine a Fact in Issue

With respect to the first requirement—whether the expert's knowledge will help the trier of fact understand the evidence or determine a fact in issue—Adams testified that he was hired to determine if any code violations occurred. Doc. 26, Ex. 1 at 10:7-10, 17-19. His report identifies the Broken Arrow City Ordinances, the International Property Maintenance Code ("IPMC"), and the International Building Code ("IBC") as "Applicable Relevant Codes and Ordinances." Doc. 26, Ex. 2. He testified that his intent is to explain to the jury what the law is. However, he was unable to explain why the ordinances he proposes to testify about are so complicated as to require testimony to explain them. *Id.*, Ex. 1 a 39:15-42.10. Adams testified that Section 5.7(F)(1)(c) of the Broken Arrow City Code is the most applicable code section to this case. That section states:

> No banner, temporary, mobile, inflatable, promotional business sign shall be placed in a manner which will interfere with the flow of vehicle traffic and/or pedestrian traffic," and further requires that any "banner, temporary, mobile, inflatable, promotion business signs must be anchored to the selected location sufficient to keep them from being moved by wind or storm."

*Id.* Adams testified that while jurors would probably understand *what* the ordinance required or prohibited, they might not understand the ordinance imposed such requirements or prohibitions because it creates a hazard. *Id.*, Ex. 1 at 44:15-45:12. Nevertheless, he admitted that a juror would probably understand that the purpose of anchoring a sign is to keep it from being blown over. *Id.* at 45:15-22.[2]

---

[2] In her Response, Plaintiff argued that "Mr. Adams can also explain to the jury how it is that mere falls can and do cause serious bodily injury," and stated that Adams would "educate the jury as to the science, standards, regulations [sic], and customs that go into designing and maintaining a sidewalk and whether Defendant Ross maintained its only means of ingress and egress in accordance with scientific considerations, and in accordance with those standards, regulations and industry customs." Doc. 34 at 8. Neither of these topics was included in Adams' Expert Report. Additionally, the Court does not believe that potential jurors need expert testimony to understand that a fall on a concrete walkway could cause injury to a woman in her sixties.

Plaintiff has failed to present any legitimate argument that Adams possesses scientific, technical or other specialized knowledge that will help the trier of fact understand the evidence or determine a fact issue. Accordingly, the Court concludes that Adams' testimony concerning what the code requires is not helpful to the trier of fact.

### 2. Remaining Factors

With respect to the remaining factors—whether the testimony is based on sufficient facts or data; whether the testimony is the product of reliable principles and methods; and whether the expert has reliably applied the principles and methods to the facts of the case—Adams testified that in preparing his opinion, he looked up some codes; reviewed the video of the fall and the statement of Ray Whitley, a Residential Plans Examiner for the City of Broken Arrow; looked at some photographs and took additional photographs; and—13 months after the accident—visited the accident site. Ex. 1 at 17:23-18:12. He did not talk to the plaintiff, to anyone who witnessed the incident giving rise to this lawsuit, or to any Ross employees. *Id.* at 10:25-11:18. He did not do any measurements of the walkway, nor did he inspect it to determine whether it was hazardous. *Id.* at 18:5:-12. He did no coefficient friction testing on the type of shoes plaintiff was wearing. *Id.* at 18:16-19:4.

In light of the above-described deficiencies in Adams' investigation and preparation, the Court cannot conclude that it is a product based on reliable principles and methods.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Strike Plaintiff's Expert (Doc. 26) is hereby granted.

ENTERED this 11th day of September, 2019.

_____
TERENCE C. KERN
United States District Judge